UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK

_____

MICHAEL A. LOPEZ,

                              Petitioner,

        v.                                                9:22-CV-0622
                                                          (GTS)
BRIAN McAULIFFE,

                              Respondent.

_____

APPEARANCES:                                    OF COUNSEL:

MICHAEL A. LOPEZ
Petitioner, pro se
19-B-1894
Hudson Correctional Facility
Box 576
Hudson, NY 12534

HON. LETITIA JAMES                              ROBERT C. McIVER, ESQ.
Attorney for Respondents                        Ass't Attorney General
Attorney General of New York
28 Liberty Street
New York, NY 10005

GLENN T. SUDDABY
UNITED STATES DISTRICT JUDGE

## DECISION and ORDER

## I.    INTRODUCTION

Petitioner pro se Michael Lopez seeks federal habeas corpus relief pursuant to 28

U.S.C. § 2254.  Dkt. No. 1, Petition ("Pet."); Dkt. No. 1-1, Supporting Exhibits.

Respondent opposed the Petition.  Dkt. No. 17, Answer; Dkt. No 17-1, Response

Memorandum ("Resp.");  Dkt. No. 17-2–17-5, Supporting Exhibits.  Petitioner replied.

Dkt. No. 19, Traverse ("Trav.").[1]  For the reasons below, the Petition is dismissed and denied in its entirety.

## II.    RELEVANT BACKGROUND

### A. Investigation and Arrest

Throughout the summer of 2018, the Jefferson County Drug Task Force ("Task Force") began to investigate petitioner for allegedly selling drugs.  Dkt. No. 17-2 at 99. In June 2018, through a series of two undercover buys, the Task Force observed petitioner selling narcotics to a confidential informant.  *Id.* at 13-14, 99, 110.  The confidential informant involved then identified petitioner in a photo array.  *Id.* at 99. Based on the Task Force's evidence, a Jefferson County grand jury returned a four-count indictment in September 2018, charging petitioner with two counts of Criminal Sale of a Controlled Substance in the Third Degree and two counts of Criminal Possession of a Controlled Substance in the Third Degree.  *Id.* at 13-14.  Police then sought and received an arrest warrant for petitioner.  *Id.* at 99.

Acting on the arrest warrant, the Task Force began conducting surveillance on petitioner.  Dkt. No. 17-2 at 99.  On October 9, 2018, the Task Force observed a person matching petitioner's description leave petitioner's known residence and board the backseat of a vehicle idling in the driveway.  *Id.*  As the vehicle pulled away from the residence, surveilling Task Force member, Detective Ronald Gatch, asked the Watertown Police Department ("Watertown Police") to follow and conduct a vehicle stop. *Id.* at 113-14.  Detective Gatch instructed Watertown Police to obtain independent probable cause for the stop because he was not entirely certain the backseat passenger

---

[1]  For the sake of clarity, citations to parties' submissions refer to the pagination generated by CM/ECF, the Court's electronic filing system.

was petitioner.  *Id.* at 114.  As requested, Watertown Police Officer Kenneth Noone began to follow the vehicle.  *Id.* at 111.  Soon after, Officer Noone observed a cigarette butt exit the driver's side window in violation of New York State littering laws and initiated a vehicle stop.  *Id.*

As Officer Noone and his partner, Officer Adam Beshures, approached the stopped vehicle, both observed petitioner "making furtive movements with his left hand attempting to conceal something underneath an object in the back seat."  Dkt. No. 17-2 at 99.  Officer Noone executed the warrant, arrested petitioner, and placed him in the back of the patrol car.  Dkt. No. 17-4 at 17.  Following petitioner's removal from the vehicle, Officer Beshures "advised the driver, who was the owner of the vehicle, that there was an item being concealed in the back seat[]" and asked the driver for consent to take the item.  *Id.* at 27.  The driver granted consent and Officer Beshures removed a plastic baggie containing crack cocaine.  *Id.* at 25, 27; Dkt. No. 17-2 at 99.  While Officer Noone filled out paperwork evidencing the owner's consent to search the car, petitioner made an inculpatory statement.  Dkt. No. 17-2 at 125.

Following petitioner's arrest, a Jefferson County grand jury returned a second indictment, charging petitioner with one count of Criminal Possession of a Controlled Substance in the Third Degree, one count of Criminal Possession of a Controlled Substance in the Fourth Degree, and one count of Criminally Using Drug Paraphernalia in the Second Degree.  Dkt. No. 17-2 at 16-17.

The prosecution moved for consolidation of the two indictments, and, in May 2019, the Jefferson County Court granted the consolidation motion.  Dkt. No. 17-2 at 106-08.

**B. Suppression Hearing**

In December 2018, petitioner's assigned counsel Eric Swartz filed an omnibus motion in trial court requesting *inter alia* the suppression of: (1) all physical evidence recovered from the vehicle and petitioner's person following the police's allegedly unlawful stop of the vehicle; and (2) the confidential informant's out-of-court identification of petitioner in the photo array.  Dkt. No. 17-2 at 40-48.

The next month, after the discovery of a conflict of interest, Eric Swartz requested to be relived as assigned counsel.  Dkt. No. 17-2 at 203.  The trial court granted Eric Swartz's request and assigned John Hallett[2] to represent petitioner moving forward.[3]  *Id.* at 204-05.  After his assignment, Hallett filed a demand for discovery, requested *Sandoval* and *Ventimiglia* hearings, and continued to prepare for the suppression hearing.  *See id.* at 206-11.

Following the suppression hearing, the trial court rendered a written decision denying petitioner's motion.  Dkt. No. 17-2 at 109-126.  The trial court first ruled the "stop of the vehicle was lawful based upon the warrant for the [petitioner] and the observation of the driver littering."  Dkt. No. 17-2 at 116.  The trial court then found the subsequent search of the vehicle lawful as the arresting officers observed petitioner attempting to hide a plastic bag in the vehicle, giving the officers the reasonable suspicion needed to legally search the car.  *Id.* at 118.  The court notes that, even if the officers did not have a reasonable suspicion, the officers received permission to search

---

[2]  Hereinafter, all references to "trial counsel" refer to John Hallett.

[3]  From 2003 to 2018, Hallett served as a judge for LeRay Town Court in Jefferson County.  Throughout 2017, Hallett uttered several homophobic comments to a Jefferson County attorney while presiding over a case.  The following year, the New York State Commission on Judicial Conduct filed a formal complaint against Hallett, and, in November 2018, Hallett agreed to resign as a judge and never seek or accept another judicial commission.  Hallett received no further discipline and returned to private practice in January 2019.  Dkt. No. 17-2 at 204.

the vehicle from the owner.  *Id.*  Thus, the trial court concluded that "any physical property obtained [from the car] is admissible in a trial on the matter."  *Id.*

The trial court also found "nothing unduly suggestive about the photographic array[]" shown to the confidential informant nor anything "suggestive about the instructions[]" the police gave to the confidential informant concerning the photo array. Dkt. No. 17-2 at 115.  As such, the trial court held the out-of-court identification admissible at trial.  *Id.*

### C.  Plea Agreement

At a pre-trial conference in June 2019, the parties discussed a potential plea agreement.  Dkt. No. 17-4 at 45-54.  The prosecution proposed a plea agreement under which petitioner would plead guilty to one count of Criminal Sale of a Controlled Substance in the Third Degree in satisfaction of the combined indictments.  *Id.*  The trial court indicated that, if petitioner accepted the plea agreement, it would impose a 7-year sentence with 3 years of post-release supervision.  *Id.* at 45, 48-49.  The trial court informed petitioner that if he did not accept the proposed agreement "during the pre-trial conference[,]" the court would not necessarily "consent" to a similarly favorable "disposition" at a later date.  *Id.* at 46-47.  The trial court explained its philosophy by stating that defendants who "step[] forward and admit[]" responsibility for their actions prior to trial deserve more favorable sentences than defendants who "refuse to admit their responsibility" and are found guilty.  *Id.*  The trial court then informed petitioner that, if convicted on all charges, petitioner could face up to 30 years in prison.  *Id.* at 46.  At this point, the trial court agreed to briefly adjourn the conference so that petitioner could discuss the plea offer with counsel.  *Id.* at 47.

After the recess, petitioner indicated his willingness to accept the plea agreement.  Dkt. No. 17-4 at 50.  The trial court then proceeded to inform petitioner of the rights forfeited by a guilty plea.  *Id.* at 51-53.  Petitioner stated he understood that, by accepting the plea agreement, he forfeited his rights to remain silent, to a jury trial, to a presumption of innocence, and to call and confront witnesses.  *Id.* at 51.  Petitioner also confirmed that he had sufficient time to discuss the plea with his lawyer and swore he had not consumed any drugs or alcohol in the last 24 hours that could affect his understanding of the plea offer.  *Id.* at 51-53.  Petitioner then pled guilty, and based on petitioner's affirmations, the trial court accepted the guilty plea.  *Id.* at 53.

Soon after pleading guilty, petitioner submitted a pro se motion alleging, among other things, ineffective assistance of counsel, coercive behavior from trial counsel, prosecutorial misconduct, and improper findings in the suppression hearing.  Dkt. No. 17-4 at 57.  Petitioner repeated the accusations under oath at his sentencing hearing and the trial court interpreted the motion and petitioner's in-court accusations as a motion to withdraw his guilty plea.  *Id.* at 64.  After allowing the prosecution to respond to petitioner's accusations, the trial court denied petitioner's motion to withdraw, finding the plea voluntary, and, in accordance with the plea agreement, sentenced petitioner to a 7-year term of imprisonment with 3 years of post-release supervision.  *Id.* at 62-65.

### D.  Direct and Collateral Appeals

Petitioner timely appealed his conviction to the New York Appellate Division, Fourth Department ("Fourth Department").  Dkt. No. 17-2 at 224-249.  Petitioner argued that: (1) his guilty plea was not entered knowingly, voluntarily, and intelligently due to "undue coercion" by the trial court; (2) his guilty plea was the result of ineffective

assistance of counsel; and (3) the search and seizure of evidence from the vehicle stop violated the Fourth Amendment.  *Id.* at 225.

On December 23, 2020, the Fourth Department denied petitioner's direct appeal. Dkt. No. 17-2 at 329-30.  Addressing petitioner's first contention, the Fourth Department held that petitioner did not raise the issue of trial court coercion in the trial court, and, therefore, "failed to move to withdraw [his] plea . . . on that ground."[4]  *Id.* at 329.  Thus, petitioner "failed to preserve [his trial court coercion claim] for our review[,]" and the Fourth Department refused to review the issue "as a matter of discretion in the interest of justice."  *Id.*  The Fourth Department then denied petitioner's ineffective assistance of counsel claim on the grounds that petitioner's allegations either did not survive petitioner's guilty plea or concerned "matters outside the record[.]"  *Id.*  The Fourth Department also rejected petitioner's final claim, stating that Watertown Police lawfully stopped the vehicle after witnessing "the driver throw a cigarette butt out of the window in violation of [New York] Vehicle and Traffic Law[s]."  *Id.*  at 330.  Further, the Fourth Department found that police received consent prior to searching the vehicle, and, thus, the search did not amount to a constitutional violation. *Id.*

In May 2021, petitioner moved for reconsideration of his direct appeal, arguing that *inter alia* he did in fact preserve the trial court coercion claim for Fourth Department review by withdrawing his plea at sentencing.  Dkt. No. 17-2 at 287-90.  On October 1, 2021, the Fourth Department denied petitioner's motion for reconsideration.  *Id.* at 347.

---

[4]  In trial court, petitioner sought to withdraw his plea on numerous grounds, including that his trial counsel coerced him into pleading guilty, but petitioner never asserted that the trial court coerced his plea.  Dkt. No. 17-4 at 59-62; *supra* Section II.C.

Petitioner then sought leave to appeal to the New York State Court of Appeals. Dkt. No. 1-1 at 215-27.  The Court of Appeals denied leave on March 21, 2022.  Dkt. No. 17-3 at 15.

While litigating his direct appeal, petitioner also filed a C.P.L. § 440.10 motion and a Writ of Error Coram Nobis.

In his § 440.10 motion, petitioner asked the trial court to vacate his judgment on Sixth Amendment grounds.  Dkt. No. 17-3 at 97-120.  In July 2020, the trial court denied petitioner's motion, stating that the issues were "sufficiently contained in the record . . . such that appellate review by the Fourth Department might be possible[,] . . . and therefore, the [collateral § 440.10] motion should be denied pursuant to C.P.L. § 440.10(2)(b)."  Dkt. No. 17-3 at 154.  The trial court alternatively denied the motion on the merits, stating that, even if § 440.10(2)(b) did not foreclose the trial court's review, petitioner's counsel did not "fall below the standard of objective reasonableness in these matters."  *Id.*

In September 2020, petitioner sought leave from the Fourth Department to: (1) appeal the trial court's § 440.10 decision; and (2) consolidate the § 440.10 appeal with petitioner's direct appeal.  Dkt. No. 1-1 at 72.  In March 2021, the Fourth Department denied petitioner's dual requests for leave to appeal and to consolidate the direct and collateral appeal.  Dkt. No. 17-2 at 331.

In June 2021, petitioner filed his Writ of Error Coram Nobis in the Fourth Department, arguing that his appellate counsel was constitutionally ineffective.  Dkt. No. 17-3 at 167-187.  The Fourth Department denied petitioner's motion.  *Id.* at 266.

Petitioner then sought leave to appeal to the Court of Appeals. *Id.* at 268-72. The Court of Appeals denied leave on October 20, 2021. *Id.* at 274.

After exhausting his state remedies, petitioner filed the instant Petition on June 10, 2022. Pet. at 1.

### III.    PETITION

Petitioner challenges his 2019 judgment of conviction entered by guilty plea in Jefferson County Court. Pet. at 1-16. Petitioner argues he is entitled to federal habeas corpus relief because: (1) his guilty plea was not made voluntarily, knowingly, and intelligently,[5] *id.* at 5-7; (2) his trial counsel, John Hallett, was constitutionally ineffective, *id.* at 7-8; and (3) his appellate counsel was constitutionally ineffective, *id.* at 8-10. Petitioner seeks a reversal of his judgment of conviction. *Id.* at 15.

### IV.    DISCUSSION

### A.  Claim 1: Involuntary Guilty Plea

#### 1.  Trial Court Coercion

##### a.  Procedural Default

A procedural default in federal habeas cases occurs "if the state court's rejection of a federal claim rests on a state law ground – such as the operation of a state procedural rule – that is both independent of the federal question and adequate to

---

[5] Petitioner does not specifically request this Court to review whether his guilty plea was intelligent and voluntary. Instead, petitioner asks this Court to review the state court's decisions de novo. Pet. at 5; Trav. at 14-15. Under 28 U.S.C. § 2254(a), this Court may only "entertain an application for a writ of habeas corpus . . . on the ground that [a petitioner] is in custody in violation of the Constitution or laws or treaties of the United States." § 2254(a); *see also Thomas v. Larkin,* No. 1:12–CV–2899, 2013 WL 5963133, at *13 (E.D.N.Y. Nov. 7, 2013) ("[F]ederal courts may not issue the writ of habeas corpus on the basis of a perceived error of state law[.]") (cleaned up). Accordingly, this Court cannot review the state court's decision de novo. Reading the pro se Petition liberally, this Court will instead address petitioner's constitutional claims that the state courts rejected.

support the judgment." *Jackson v. Conway*, 763 F.3d 115, 133 (2d Cir. 2014) (internal quotation marks omitted); *Coleman v. Thompson*, 501 U.S. 722, 729-30 (1991) (holding that "when a state court declined to address a prisoner's federal claims because the prisoner had failed to meet a state procedural requirement[,]" federal habeas review is barred by the independent and adequate state ground doctrine). Procedural default precluding federal habeas review applies only "if the last state court rendering a judgment in the case rests its judgment on the procedural default." *Harris v. Reed*, 489 U.S. 255, 262 (1989); *see also Green v. Travis*, 414 F.3d 288, 294 (2d Cir. 2005).

"New York courts consistently hold that a claim not raised in a motion to withdraw or motion to vacate the judgment made before the trial court is unpreserved for appellate review." *Anaya v. Brown*, No. 1:05-CV-8974, 2006 WL 2524079, at *7 (S.D.N.Y. Sept. 1, 2006) (citing *People v. Oldham*, 24 A.D.3d 1289, 1289 (4th Dep't 2005) ("Defendant moved to withdraw his plea on a ground different from that raised on appeal, and thus defendant's present contention . . . is not preserved for our review."); *People v. Dowell*, 236 A.D.2d 242, 242 (1st Dep't 1997) (holding that defendant's claim that his plea was entered involuntarily is unpreserved for appellate review because defendant's motion to withdraw the plea did not raise any of the issues raised on appeal); *People v. Covell*, 276 A.D.2d 824, 825 (3d Dep't 2000) ("[D]efendant did not premise his motion [to withdraw] on the [issues raised on appeal,]" and, therefore, the issues raised on appeal are unpreserved.)). When New York courts reject claims as unpreserved, it qualifies as "an adequate and independent state law ground, which generally precludes habeas review." *Rutigliano v. Lamanna*, No. 9:19-CV-0745 (GLS/ML), 2022 WL 4348580, at *7 (N.D.N.Y. July 20, 2022).

Here, petitioner argues his guilty plea was not knowing and voluntary because the trial court "coerced" the plea.  Trav. at 10.  The Fourth Department dismissed petitioner's contention, holding the trial court coercion claim unpreserved for appellate review as petitioner "failed to raise that contention in County Court and he therefore failed to move to withdraw the plea . . . on that ground.  Thus, [petitioner] failed to preserve that contention for [the Fourth Department's] review[.]"[6]  Dkt. No. 17-2 at 329. Such a holding constitutes an adequate and independent state law ground for dismissal, and, thus, precludes this Court from habeas review.  *See Rutigliano*, 2022 WL 4348580, at \*7 ("The Third Department's holding that Petitioner's argument was unpreserved, constitutes an adequate and independent state law ground, which generally precludes habeas review."); *Rojas v. Heath*, No. 7:11-CV-4322, 2012 WL 5878679, at \*7 (S.D.N.Y. Oct. 18, 2012) (denying a petitioner's habeas petition where the state appellate court "relied upon New York State's requirement that a challenge to the validity of a guilty plea be preserved for appellate review by first seeking in the trial court to withdraw the plea[] or by moving to vacate the judgment of conviction."); *Moore v. Lape*, No. 1:08-CV-0474, 2010 WL 3522227, at \*3 (W.D.N.Y. Sept. 8, 2010) ("Habeas courts in this Circuit have held that the failure to move to withdraw a guilty plea before sentencing constitutes an adequate and independent state ground barring habeas review.").

Therefore, this Court finds petitioner's trial court coercion claim is procedurally barred and may only review the claim if petitioner can establish either cause for noncompliance and resulting prejudice or actual innocence.  *Rutigliano*, 2022 WL 4348580, at \*7 (finding a "narrow exception to the preservation rule" where a petitioner

---

[6]  Petitioner also failed to raise the issue in his § 440.10 motion to vacate the judgment.  *See* Dkt. No. 17-3 at 133-55.

can "demonstrate[] cause for [] procedural default and actual prejudice"); *Dunham v. Travis*, 313 F.3d 724, 730 (2d Cir. 2002) (finding an exception to the preservation rule where a petitioner can demonstrate "a fundamental miscarriage of justice, i.e., that he is actually innocent of the crime for which he has been convicted").

Here, petitioner does not contend, nor does the record reflect, petitioner's actual innocence or any cause for petitioner's noncompliance.  Thus, this Court see no reason to lift the procedural bar to the trial court coercion claim.  As such, the Court dismisses petitioner's court coercion claim as procedurally barred under the independent and adequate state ground doctrine.

### b.  Intelligent and Voluntary Plea

Even if not procedurally barred, the Court finds petitioner's trial court coercion claim meritless as the record indicates petitioner entered his plea intelligently and voluntarily.  A plea is intelligent if the "accused had the advice of counsel and understood the consequences of his plea, even if only in a fairly rudimentary way[.]" M*iller v. Angliker*, 848 F.2d 1312, 1320 (2d Cir. 1988).  A plea is voluntary "if it is not the product of actual or threatened physical harm, mental coercion overbearing the defendant's will, or the defendant's sheer inability to weigh his options rationally."  *Id.*

Here, petitioner had the "advice of counsel" as evidenced by petitioner's statements during his plea allocution indicating petitioner spoke with trial counsel about the plea and did not need more time with his attorney before pleading guilty.  Dkt. No. 17-4 at 51.  Petitioner also swore that he understood the constitutional rights he was waiving by pleading guilty, and in fact, asked intelligent questions about whether his right to appeal was also waived, demonstrating a solid understanding of the consequences of his plea.

*Id.* at 51-52.  Petitioner then admitted in open court that he did in fact sell cocaine in Jefferson County in June 2018.  *Id.* at 53.  As such, the Court finds petitioner's plea to be intelligent.

Petitioner disputes that his plea was voluntary.  Pet. at 5; Trav. at 10.  Petitioner claims that the trial court mentally coerced him into "taking a plea[.]"  Dkt. No. 17-2 at 235-37.  As evidence, petitioner points to the trial court's colloquy, reproduced below, explaining its sentencing philosophy and petitioner's sentencing exposure:

<table>
<tr><td>Court:</td><td>So[,] I want to tell you what my philosophy is as far as sentencing is concerned.  For those defendants who have messed up and committed a crime and have stepped forward and admitted that to the Court, my sentence is accordingly [a shorter term].  If those defendants say they have done nothing wrong and we go to trial – and admittedly, if you have done nothing wrong, Mr. Lopez, you should not plead guilty to anything.</td></tr>
<tr><td></td><td>But for those defendants who have done something wrong and refuse to admit their responsibility, go through a trial, not me, but 12 people tell me that that individual is guilty, that individual does not deserve or get the same sentence as the individual who took responsibility, stood up and admitted his or her fault. Do you understand that?</td></tr>
<tr><td>Mr. Lopez:</td><td>Yeah.</td></tr>
<tr><td>Court:</td><td>All right. Now, do you understand you could face anywhere from 6 to 15 [years] on one Indictment, and an additional 6 to 15 on the second Indictment?</td></tr>
<tr><td>Mr. Lopez:</td><td>Yeah.</td></tr>
</table>

Dkt. No. 17-4 at 46-47.  Petitioner argues the trial court, by threatening him with the possibility of the "maximum possible sentence[,]" coerced petitioner's guilty plea. Dkt. No. 17-2 at 236-37.

The Court disagrees.  First, petitioner is factually incorrect. Nowhere in the transcript of the plea allocution does the trial court *threaten* to impose a maximum sentence on petitioner if the plea agreement is not accepted.  *See* Dkt. No. 17-4 at 40-

55.  Instead, the trial court simply acknowledges that petitioner *could* receive the maximum sentence if found guilty.  *Id.* at 46-47.

Second, the trial court's explanation that petitioner would likely receive a longer sentence if convicted at trial cannot be considered coercive.  The Second Circuit has long allowed trial courts to explain that a plea deal would likely result in a shorter sentence than a sentence following a jury conviction.  *See U.S. ex rel. McGrath v. LaVallee*, 348 F.2d 373, 375 (2d Cir. 1965) (trial court's statement that if 25–year–old defendant were tried and convicted he might be imprisoned "for the rest of [his] life" and that a plea of guilty might afford him "some opportunity of receiving a shorter sentence" held not improperly coercive); *Mauro v. Walker*, 99 F.3d 402, 402 (2d Cir. 1995) (trial court's statement that the trial court "had previously imposed longer sentences on other defendants" who had not pled guilty held not improperly coercive).  Such a "mere explanation of the alternatives" petitioner would face if he proceeded to trial "does not support . . . petitioner's allegations that . . . [the trial court coerced him] into pleading guilty[.]"  *McGrath*, 348 F.2d at 377.

Third, the mere fact the trial court offered petitioner a favorable sentence as an inducement to plead guilty does not rise to the level of coercion.  *See U.S. v. Cruz*, 156 F.3d 366, 374 (2d Cir. 1998) ("[T]he Supreme Court has rejected the claim that the . . . offer of a lower sentence in exchange for a guilty plea impermissibly compels a [petitioner] to incriminate himself or herself.").  As such, the Court does not find any support for the contention that petitioner's plea was coerced and, therefore, involuntary.

The Court concludes that petitioner's trial court coercion claim is both procedurally barred and meritless and is denied.

### 2. Trial Counsel Coercion

Petitioner revives the argument in his habeas petition.  Trav. at 10; Dkt. No. 17-3 at 118.  However, the claim is unexhausted.  To exhaust a claim for federal habeas purposes, a petitioner must present the issue "to the highest court of the pertinent state[,]" thereby giving the state the "initial opportunity to review and correct constitutional violations."  *Copeland v. Walker*, 258 F.Supp.2d 105, 141 (E.D.N.Y. 2003) (internal quotation marks omitted); *see also* 28 U.S.C. § 2254(b-c).  At his sentencing hearing, petitioner argued that trial counsel coerced an involuntary guilty plea.  Dkt. No. 17-4 at 62.  After raising the trial counsel coercion issue at his sentencing, petitioner did not raise the claim in his direct appeal, §440.10 motion, or his Coram Nobis petition.  As petitioner did not give the state courts an opportunity to remedy the alleged constitutional violation, the claim is unexhausted for this Court's review.  Nevertheless, as the claim is plainly meritless, the Court exercises its power under 28 U.S.C. § 2254(b)(2) to deny the claim on the merits.

Petitioner alleges trial counsel repeatedly pressured petitioner to plead guilty, scolding him to "stop being a pussy and take the plea. It's the best [I can] get for you." Dkt. No. 17-3 at 24.  Petitioner contends such language amounted to "mental coercion overbearing [petitioner]'s will[]" and bullied him into an involuntary guilty plea.  *Id*. at 118; *Miller*, 848 F.2d at 1320.  The Court disagrees.  The Court does not condone trial counsel's language but recognizes that behind the harsh words was a "blunt rendering of an honest but negative assessment of [petitioner]'s chances at trial[.]"  *U.S. v. Juncal*, 245 F.3d 166, 172 (2d Cir. 2001).  Such candid instruction, especially when "combined

with advice to enter [a guilty] plea," does not "constitute improper behavior or coercion that would suffice to invalidate a plea."  *Id.*

Accordingly, the Court finds petitioner's counsel coercion claim meritless, and petitioner's Claim 1 is dismissed.

## B. Claim 2: Ineffective Assistance of Trial Counsel

Petitioner argues that trial counsel was ineffective because: (1) counsel failed to adequately defend petitioner at the suppression hearing; (2) counsel had an actual conflict with the Jefferson County Court regarding of trial counsel's recent resignation from the LeRay Town Court; and (3) counsel had an actual conflict with petitioner regarding petitioner's motion to withdraw his guilty plea.  Trav. at 7-12.  The Court denies all three claims for the reasons below.

## 1. Standard of Review

Prior to reviewing petitioner's ineffective assistance claims, the Court must note the heightened standard of review under the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA").  AEDPA requires a federal court sitting in habeas review to defer to a state court's adjudication of federal law claims made on the merits unless the "decision [] was contrary to, or involved an unreasonable application of, clearly established federal law[] . . . or . . . was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding."  28 U.S.C. § 2254(d).  Thus, a federal court may not grant relief "simply because that court concludes in its independent judgment that the relevant state-court decision applied . . . federal law erroneously or incorrectly."  *Williams v. Taylor*, 529 U.S. 362, 411 (2000).

Rather, a federal court may only grant relief if it finds the state court's application of federal law or fact "objectively unreasonable." *Id.* at 409.

Here, unless otherwise noted, petitioner's claims were decided on the merits by state courts. *See* Dkt. No. 17-3 at 143-155. Therefore, for this Court to find for petitioner on Claim 2, the Court must hold the state court's application of fact or federal law was objectively unreasonable. *Williams*, 529 U.S. at 409.

### 2. Suppression Hearing

#### a. Procedural Bar

Under *Tollett v. Henderson*, a petitioner who has pled guilty may not pursue federal habeas relief for ineffective assistance of counsel claims. 411 U.S. 258, 267 (1973) ("[A] guilty plea represents a break in the chain of events . . . . When a criminal defendant has [pled guilty] . . . he may not thereafter raise independent claims relating to the deprivation of constitutional rights that occurred prior to the entry of the guilty plea.").

Only ineffective assistance claims that bear on the voluntariness of a guilty plea can bypass the *Tollett* bar. *Gomez v. Miller*, No. 9:19-CV-1571 (TJM), 2021 WL 5446979, at *12 (N.D.N.Y. Nov. 22, 2021). Such a voluntariness argument "is limited to [solely] attacking the voluntary and intelligent character of the guilty plea by showing that the advice [petitioner] received from counsel was not within acceptable standards." *Id.* (cleaned up). "Consequently, an unconditional guilty plea waives all claims of ineffective assistance of counsel relating to events prior to the guilty plea that did not affect the voluntariness of the plea." *Canal v. Donelli*, No. 9:06-CV-1490 (TJM/DRH), 2008 WL 4287385, at *3 (N.D.N.Y. Sept. 17, 2008); *Beckary v. Chappius*, No. 1:11-CV-

0850, 2012 WL 3045691, at *10 (W.D.N.Y. July 25, 2012) ("[C]laims[ that] involve counsel's pre-plea actions and do not affect the voluntariness of the plea itself[ are] waived by [p]etitioner's voluntary, knowing[,] and intelligent guilty plea[.]").

Here, petitioner claims that trial counsel was ineffective at the suppression hearing.  Trav. at 8-9.  The argument does not touch on the voluntariness of petitioner's plea.  *See Spencer v. Rockwood*, No. 9:22-CV-0239 (GTS), 2024 WL 3398390, at *12 (N.D.N.Y. July 12, 2024) (holding that "trial attorney's alleged failure to pursue *Brady* material and investigate potential defenses has nothing to do with the voluntariness of [p]etitioner's plea.").  Therefore, *Tollett* bars petitioner's ineffectiveness claim.

### b. Constitutionally Sufficient Representation

Even if *Tollett* did not bar petitioner's ineffectiveness claim, the Court finds the claim meritless as the record indicates trial counsel provided constitutionally sufficient counsel at the suppression hearing.  To succeed on a claim of ineffective assistance of counsel, a petitioner must show that: "(1) counsel's performance was objectively deficient, and (2) petitioner was actually prejudiced as a result."  *Harrington v. U.S.*, 689 F.3d 124, 129 (2d Cir. 2012) (citing *Strickland v. Washington*, 466 U.S. 668, 688, 694 (1984)).

To satisfy the first *Strickland* prong, a petitioner must establish that "counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed [to] the defendant by the Sixth Amendment."  *Strickland*, 466 U.S. at 687.  "Such errors include omissions that cannot be explained convincingly as resulting from a sound trial strategy, but instead arose from oversight, carelessness, ineptitude, or laziness."  *Wilson v. Mazzuca*, 570 F.3d 490, 502 (2d Cir. 2009) (cleaned up).  When reviewing an

ineffective assistance claim, courts must be "highly deferential" and approach the analysis with a "strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance[.]" *Strickland*, 466 U.S. at 689.

The second *Strickland* prong requires a petitioner to "show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland*, 466 U.S. at 694. Courts must look to the "cumulative weight of error" to determine whether any potential prejudice "reache[s] the constitutional threshold." *Lindstadt v. Keane*, 239 F.3d 191, 202 (2d Cir. 2001). Petitioner must meet both "the performance prong [and] the prejudice prong[]" to demonstrate a Sixth Amendment violation. *Bennett v. U.S.*, 663 F.3d 71, 85 (2d Cir. 2011).

Here, to satisfy *Strickland*'s first prong, petitioner claims that trial counsel did not adequately question Watertown Police at the suppression hearing about: (1) the photo array; and (2) the justification to search the motor vehicle.[7] Trav. at 8-9.

Petitioner correctly notes that the confidential informant identified two persons in the photo array. *See* Dkt. No. 17-4 at 10. Petitioner expounds, arguing that, by identifying two persons, the confidential informant did not clearly identify petitioner as the person who sold the informant drugs. Trav. at 8-9. Petitioner alleges that trial counsel did not adequately assert this point at the suppression hearing. Trav. at 8-9. The Jefferson County Court rejected this exact argument when deciding petitioner's

---

[7] Petitioner also accuses trial counsel of not filing a second Motion to Compel Discovery in May 2019 when petitioner explicitly asked trial counsel to do so. Trav. at 10. However, petitioner provides no context to support why trial counsel's decision to not file such a motion amounted to ineffective assistance of counsel. Without more, the Court concludes petitioner simply disagreed with trial counsel's defense strategy to not file a second discovery motion, and a mere disagreement in strategy does not constitute ineffective assistance of counsel. *See Wilson v. Mazzuca*, 570 F.3d at 502.

collateral appeal, finding that Watertown Police Officer Shane Ryan's testimony, "taken together with the [photo array] . . ., makes clear that the confidential informant identified [petitioner] as the person who sold the drugs to the informant." Dkt. No. 17-3 at 152. The Court does not find the state court's ruling objectively unreasonable. Trial counsel extracted testimony from Officer Ryan establishing that the confidential informant identified two persons in the photo array. Dkt. No. 17-4 at 10-11. Officer Ryan then explained the discrepancy, stating that the confidential informant recognized two people in the array but only identified petitioner as the person who sold them drugs. *Id.* at 11. Therefore, given the dubious value of continuing this line of questioning, trial counsel's decision to abandon the issue qualifies as a sound strategic choice and cannot be found to violate the Sixth Amendment.

Petitioner also argues Officer Shane Ryan unduly influenced the confidential informant while presenting the photo array and trial counsel failed to adequately argue this point at the suppression hearing. Trav. at 8. However, any argument that the photo array was unduly suggestive would have been in vain. Officer Ryan testified at the suppression hearing that he read "verbatim" the form instructions and questions included with the photo array and provided no other guidance to the confidential informant. Dkt. No. 17-4 at 8. The form included generic instructions to "[p]ay no attention to any markings that may appear on the photos, or any other difference in the type or style of the photographs[,]" and to ignore features, like facial hair, that can be changed easily. Dkt. No. 1-1 at 136. New York courts have consistently found similar language to not be unduly suggestive. *See People v. Wells*, 141 A.D.3d 1013, 1017 (3d Dep't 2016); *People v. Jackson*, 176 A.D.3d 1312, 1313 (3d Dep't 2019); *People v.*

*Hawkins*, 167 A.D.3d 1071, 1072-73 (3d Dep't 2018).  Therefore, trial counsel's decision to not raise the suggestiveness issue at the suppression hearing was likely a strategic choice to focus on issues with a higher probability of success.  Such a decision can be explained convincingly as a result of sound trial strategy and, therefore, "falls within the wide range of reasonable professional assistance" found to be sufficient under *Strickland*.  *Strickland*, 466 U.S. at 689.

Petitioner next contends that trial counsel failed to adequately cross-examine the officers who arrested petitioner regarding their justification to search the vehicle.  Trav. at 9-10.  The Jefferson County Court rejected a similar argument when deciding petitioner's collateral appeal.  *See* Dkt. No. 17-3 at 152.  The Court does not find the Jefferson County Court acted unreasonably.  The record indicates that trial counsel extensively questioned Officer Noone about the justification and consent form used for the vehicle search.  *See* Dkt. No. 17-4 at 18-21.  Any further questions about the justification for searching the vehicle would have had limited utility as police received verbal consent from the vehicle owner prior to initiating the search.  *Id.* at 27.  Accordingly, any concerns about justification became moot once police received consent to search the back seat.  Thus, trial counsel's decision to limit his questions regarding the search was a sound strategic decision.  As such, and considering the heightened AEDPA standard, the Court cannot find trial counsel perform deficiently at the suppression hearing.

### 3.  Conflict of Interest

Petitioner next argues that trial counsel's resignation from the LeRay Town Court created an actual conflict of interest between trial counsel and Jefferson County Court in violation of the Sixth Amendment's guarantee of conflict-free counsel.[8]  Trav. at 7-8.

An attorney "has an actual . . . conflict of interest when, during the course of the representation, the attorney's and defendant's interests diverge with respect to a material factual or legal issue or to a course of action."  *Winkler v. Keane*, 7 F.3d 304, 307 (2d Cir. 1993) (internal quotation marks omitted).  To succeed on an actual conflict claim, a defendant must also show that the conflict "adversely affected [the] counsel's performance."  *U.S. v. Schwarz*, 283 F.3d 76, 91 (2d Cir. 2002).

Petitioner contends that trial counsel's resignation as a justice of the LeRay Town Court created an "[actual] conflict of interest with the [trial] court[ ]."  Pet. at 7; Trav. at 8.  Specifically, petitioner alleges, because of his resignation, trial counsel feared upsetting the judge and attracting further disgrace and, therefore, did not pursue certain arguments aggressively in trial court.  Pet. at 7; Trav. at 8.  After reviewing similar claims in petitioner's state § 440.10 motion, the Jefferson County Court found petitioner's claims to be meritless. *See* Dkt. No. 17-3 at 153 (rejecting petitioner's argument that trial counsel's prior resignation from LeRay Town Court created a Sixth Amendment violation because "Attorney Hallett did not even begin representing [petitioner] until several weeks after his resignation. At the time of [petitioner's] guilty plea, it had been nearly six months since the resignation was effective.").  As such, this Court cannot find an actual conflict between petitioner and trial counsel unless this Court believes the

---

[8]  As discussed in Section II.B, trial counsel resigned from LeRay Town Court for making homophobic remarks to an attorney.

state court's decision was objectively unreasonable.  *Williams*, 529 U.S. at 409.  The Court refuses to do so.

Here, petitioner fails to adequately explain how trial counsel's 2018 controversy with an unrelated third party in LeRay Town Court, where counsel acted in a judicial capacity, later caused trial counsel's allegedly timid behavior in 2019 when arguing as an advocate in Jefferson County Court.  In fact, the Second Circuit has rejected the presumption that the mere existence of disciplinary proceedings against an attorney might dampen an attorney's zealousness in their representation of a defendant. *See Lopez v. U.S.*, 792 F. App'x 32, 37 (2d Cir. 2019) (finding that disciplinary proceedings running parallel to the defense attorney's representation of the defendant "did not hamper [defense counsel's] representation of [the defendant]"); *Waterhouse v. Rodriguez*, 848 F.2d 375, 383 (2d Cir. 1988) (finding that disciplinary proceedings running parallel to the defense attorney's representation of the defendant did not create a conflict, and, in fact, "provided an incentive for the vigorous efforts [defense counsel] appears to have expended."); *see also Gilliam v. Artus*, 653 F. Supp. 2d 315, 330 (W.D.N.Y. 2009) (unrelated civil wrongdoing did not impact the defendant's case); *Hernandez v. Phillips*, No. 1:02-CV-9098, 2007 WL 2107472, at *24 (S.D.N.Y. July 20, 2007) (rejecting claim that ongoing disciplinary proceeding "preoccupied" counsel and made counsel afraid of "ruffling the court's feathers.").

Therefore, without evidence directly tying trial counsel's allegedly timid behavior to trial counsel's prior judicial resignation, the Court refuses to find the Jefferson County Court acted objectively unreasonable or find an actual conflict.

### 4. **Guilty Plea**[9]

Petitioner filed a motion to withdraw his guilty plea based on *inter alia* trial counsel's ineffective assistance of counsel during the suppression hearing and plea allocution. Dkt. No. 17-4 at 59-62. Petitioner argues that, because of the accusations of wrongdoing against trial counsel in the motion to withdraw, trial counsel could not have provided petitioner with sufficient representation regarding the motion to withdraw. Trav. at 10.

In *Hines v. Miller*, the Second Circuit noted that a court may approach such claims in two ways: either (1) "as a claim that petitioner was denied his right to counsel because he was effectively unrepresented on his motion to withdraw his plea," or (2) "as a claim that petitioner was denied the effective assistance of counsel because an actual conflict of interest adversely affected counsel's performance." 318 F.3d 157, 163 (2d Cir. 2003). The *Hines* court found that the Second Circuit generally applied the conflict of interest analysis test, *see, e.g., U.S. v. Davis,* 239 F.3d 283, 285–88 (2d Cir. 2001); *Lopez v. Scully,* 58 F.3d 38, 41 (2d Cir. 1995); *Fluitt v. Superintendent, Green Haven Corr. Facility,* 480 F. Supp. 81, 86 (S.D.N.Y. 1979), and has "decided [such] case[s] on the basis of whether the underlying [withdrawal] motion ha[s] sufficient merit to create an actual conflict of interest[.]" *Hines*, 318 F.3d at 163. The Court will use the Second Circuit's preferred conflict analysis test, and, as such, will weigh whether petitioner's motion to withdraw possessed sufficient merit to create a conflict.

---

[9] Petitioner raised a similar claim in his direct appeal, but the Fourth Department ruled against petitioner on procedural grounds. *See* Dkt. No. 17-2 at 329. Therefore, AEDPA deference does not apply to this claim.

Here, petitioner's motion to withdraw included allegations of ineffective assistance of counsel, coercion, withholding *Brady* and *Rosario* materials, prosecutorial misconduct, tampering with evidence, and allowing perjured testimony at grand jury.  Trav. at 10; Dkt. No. 17-4 at 59-62.  Petitioner's claims are either meritless,[10] factually contradicted by the record,[11] or conclusory allegations with no support.[12]  Accordingly, the Court finds that the motion to withdraw lacks "sufficient merit to create an actual conflict of interest[,]" *Hines*, 318 F.3d at 163, and, thus, the Court concludes no actual conflict existed between petitioner and trial counsel.

Petitioner has failed to demonstrate that trial counsel acted deficiently, and, therefore, petitioner's Claim 2 is denied.

## C.  Claim 3: Ineffective Assistance of Appellate Counsel

In his third claim, petitioner argues that appellate counsel proved ineffective because appellate counsel failed to: (1) adequately argue that his judicial coercion claim was preserved, Pet. at 8; Dkt. No. 17-3 at 174; (2) consolidate petitioner's direct appeal with his §440.10 appeal, Pet. at 8; Dkt. No. 17-3 at 175-76; (3) adequately challenge the trial court's findings at the suppression hearing, Pet. at 8; Dkt. No. 17-3 at 176, 183-85; and (4) adequately communicate with petitioner both before and after filing petitioner's appeal, Pet. at 8; Dkt. No. 17-3 at 177.

---

[10]  First, as discussed in Section IV.A.2, the Court found petitioner's claim that trial counsel coerced him into pleading guilty meritless.  Second, as discussed in Section IV.B.2.b, the Court found petitioner's ineffective assistance of trial counsel claims meritless.

[11]  Petitioner's claim that the prosecution withheld *Brady* and *Rosario* materials is contradicted by the record. *See* Dkt. No. 17-4 at 62-63 prosecution stating, and trial counsel silently acquiescing, that it turned over all *Brady* and *Rosario* materials prior to the guilty plea.

[12] Petitioner final claims – prosecutorial misconduct, evidence tampering, and perjured testimony – are all conclusory allegations offered without any evidence of wrongdoing.  *See* Dkt. No. 17-4 at 60.

The Sixth Amendment guarantees the right to effective representation on direct appeal. *Lynch v. Dolce*, 789 F.3d 303, 311 (2d Cir. 2015). In assessing an ineffective assistance of appellate counsel claim, "*Strickland*'s two-prong test applies[.]" *Aparicio v. Artuz*, 269 F.3d 78, 95 (2d Cir. 2001). To satisfy *Strickland* on appeal, a petitioner must first show "that his attorney's performance fell below an objective standard of reasonableness, and, second, that there was prejudice[.]" *Lynch*, 789 F.3d at 311 (internal quotation marks and citations omitted); *see also Mayo v. Henderson*, 13 F.3d 528, 533 (2d Cir. 1994) (to satisfy *Strickland*'s first prong, "a petitioner . . . [must] show[] that [appellate] counsel omitted significant and obvious issues while pursuing issues that were clearly and significantly weaker."); *Claudio v. Scully,* 982 F.2d 798, 805 (2d Cir. 1992) (finding that there must be a "reasonable probability that, but for [appellate] counsel's inadequate representation, the result of the proceeding would have been different.") (internal quotation marks omitted).

Before turning to petitioner's arguments, the Court notes that the Fourth Department already denied identical claims on the merits. *See* Dkt. No. 17-3 at 266. Therefore, for this Court to rule for petitioner on Claim 3, the Court must find the state court's application of fact or federal law was objectively unreasonable. *Williams*, 529 U.S. at 409. For the reasons below, the Court refuses to do so.

### 1. Preservation of Judicial Coercion Claim

To establish *Strickland*'s first prong, petitioner alleges that appellate counsel failed to adequately argue petitioner's judicial coercion claim was preserved. Dkt. No. 17-3 at 174. However, petitioner did not advance the judicial coercion claim in his motion to withdraw his plea in trial court, clearly making the issue unpreserved for appellate

review.  *See Carpenter v. Unger*, No. 9:12-CV-0957 (GTS/TWD), 2014 WL 4105398, at
*38 (N.D.N.Y. Aug. 20, 2014); *supra* Section IV.A.1.  Considering the futility of arguing
otherwise, this Court concludes that appellate counsel did not "omit[ a] significant and
obvious issue[]" when appellate counsel declined to vigorously pursue the preservation
issue.  *See Mayo*, 13 F.3d at 533.  As such, petitioner fails to demonstrate a Sixth
Amendment violation.

### 2.  Consolidation of Appeals

Petitioner next argues that appellate counsel's failure to move the Fourth
Department to consolidate petitioner's direct appeal and his collateral § 440.10 appeal
was objectively unreasonable and satisfies *Strickland*'s first prong.  Dkt. No. 17-3 at
175-76.  Contrary to petitioner's contention, appellate counsel did in fact move to
consolidate petitioner's direct and collateral appeal.  *See* Dkt. No. 17-3 at 90.  As
appellate counsel did move the Fourth Department to consolidate petitioner's appeals,
the Court refuses to find appellate counsel deficient based on petitioner's inaccurate
claims.

To the extent petitioner argues that the denial of the motion to consolidate
demonstrates appellate counsel's ineffectiveness, this argument also fails.  Dkt. No. 17-
3 at 175-76.  An adverse ruling is not enough to prove ineffective assistance of counsel;
instead, petitioner must demonstrate counsel's "performance fell below an objective
standard of reasonableness."  *Lynch*, 789 F.3d at 311 (internal quotation marks omitted).
Here, petitioner provides no evidence, nor does anything in the record reflect, that the
quality of the motion to consolidate submitted by appellate counsel fell below an

objective standard of reasonableness.  Therefore, the Court refuses to find appellate counsel's performance deficient.

### 3.  Suppression Hearing

Petitioner also contends that appellate counsel omitted significant and obvious issues during the suppression hearing in favor of weaker arguments.  Dkt. No. 17-3 at 176, 183-85.  Specifically, petitioner claims that challenging the photo array identification and credibility of the police officers at the suppression hearing were obviously stronger issues then the issues appellate counsel raised on appeal.

Petitioner previously accused trial counsel of ignoring the photo array identification argument in favor of allegedly weaker arguments.  *Supra* IV.B.1.  In that context, this Court found that trial counsel was not ineffective for only briefly addressing the photo array identification issue as the argument had little chance to succeed.  *Id.* We have no reason to find differently here.  The photo array identification issue had little chance at success on appeal, and appellate counsel, therefore, appropriately chose to focus on other issues.  *See Mayo*, 13 F.3d 528, 533 ("[C]ounsel does not have a duty to advance every nonfrivolous argument that could be made.")

Petitioner next argues that appellate counsel failed to adequately attack the credibility of the police officers testifying at the suppression hearing.  Dkt. No. 17-3 at 176.  Petitioner, however, provides no evidence implicating the credibility of the officers or the officers' testimony.  Without providing more detail on the credibility issue, petitioner's allegation is "simply too conclusory to state a cognizable claim under *Strickland*."  *Fernandes v. U.S.*, 583 F. Supp. 3d 403, 411 (W.D.N.Y. 2022); *see also U.S. v. Holmes*, 942 F. Supp. 2d 412, 418-19 (S.D.N.Y. 2013) ("[A] claim of ineffective

assistance of counsel cannot be supported by conclusory allegations[ ]alone.") As such, the Court finds appellate counsel did not violate the Sixth Amendment by declining to vigorously pursue the photo array or credibility issues.

### 4.  Failure to Communicate

Petitioner correctly notes that appellate counsel failed to promptly notify petitioner when the Fourth Department denied his direct appeal.  Pet. 8; Dkt. No. 17-3 at 177. Petitioner contends that the near 3-month delay caused petitioner to "forfeit[ his] opportunity to be heard [on the merits] in the [Court of Appeals]" and amounts to ineffective counsel.  Dkt. No. 17-3 at 177.  Assuming arguendo that appellate counsel's tardiness satisfies *Strickland*'s first prong, petitioner suffered no prejudice from appellate counsel's mistake.  After realizing his mistake, appellate counsel notified petitioner and filed a Motion for Extension of Time in Which to Seek Leave to Appeal which the Court of Appeals accepted.  *Id.* at 2, 231-236.  The Court of Appeal then heard and denied petitioner's appeal on the merits.  *Id.* at 15.  As such, petitioner cannot demonstrate prejudice from appellate counsel's mistake, and, thus, fails to show a Sixth Amendment violation.

Petitioner next attempts to satisfy *Strickland* by arguing that, prior to the submission of the appellate brief to the Fourth Department, appellate counsel failed to communicate with him.  Dkt. No. 17-3 at 177.  However, an "appellate attorney's failure to communicate with his or her client, by itself, does not constitute per se ineffective assistance of counsel."  *Campbell v. Greene*, 440 F. Supp. 2d 125, 152 (N.D.N.Y. 2006) (internal quotation marks omitted); *McIntyre v. Duncan*, No. 2:03–CV–0523, 2005 WL 3018698, at *3 (E.D.N.Y. Nov. 8, 2005) ("Although it may be desirable and productive,

the Constitutional right to effective assistance of counsel does not encompass the requirement that an attorney consult with his client to discuss the alleged trial errors that his client wishes to pursue.").  Without more, appellate counsel's alleged failure to communicate with petitioner prior to filing the appellate brief does not establish ineffective assistance of counsel.

Petitioner has failed to demonstrate that appellate counsel acted deficiently, and, therefore, petitioner's Claim 3 is denied.

## V.    CONCLUSION

**WHEREFORE**, it is

**ORDERED** that the Petition, Dkt. No. 1, is **DENIED AND DISMISSED** in its entirety;

**ORDERED** that the Court declines to issue a Certificate of Appealability.  28 U.S.C. § 2253(c); *Banks v. Dretke*, 540 U.S. 668, 705 (2004) ("To obtain a certificate of appealability, a prisoner must 'demonstrat[e] that jurists of reason could disagree with the district court's resolution of his constitutional claims or that jurists could conclude the issues presented are adequate to deserve encouragement to proceed further.'") (quoting *Miller-El v. Cockrell*, 537 U.S. 322, 327 (2003))).  Any further request for a Certificate of Appealability must be addressed to the Court of Appeals. *See* FED. R. APP. P. 22(d); 2d Cir. R. 22.1.

**ORDERED** that the Clerk serve a copy of this Decision and Order on the parties in accordance with the Local Rules.

**IT IS SO ORDERED.**

Dated:  December 30, 2024

Glenn T. Suddaby
U.S. District Judge